**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHANNEL WALL, as Administratrix** | : | |
| **for the Estate of THOMAS WALL,** | : | **CIVIL ACTION NO. 1:04-CV-0238** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **DAUPHIN COUNTY;** | : | |
| **J.R. LOTWICK, Dauphin County** | : | |
| **Sheriff; and Deputy Sheriff BOB** | : | |
| **MYLNEK; and Deputy Sheriff** | : | |
| **TOM WONG,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM AND ORDER**

Before the Court is Magistrate Judge J. Andrew Smyser's Report and Recommendation (Doc. No. 39) on Defendant's motion for summary judgment (Doc. No. 23), Plaintiff's cross-motion for summary judgment (Doc. No. 27), and Defendant's motion to strike (Doc No. 28). The motions have been fully briefed and are ripe for disposition. Magistrate Judge Smyser recommended that Defendants' collective motion for summary judgment be denied in its entirety. The Court has conducted a de novo review of the record and will adopt certain of Magistrate Judge Smyser's recommendations and decline to adopt others. For the reasons that follow, the motion for summary judgment will be denied in part and granted in part, the motion to strike will be granted, and Plaintiff's cross-motion will be stricken as untimely.

**I.     BACKGROUND**

   **A.     Procedural Background**

The case before the Court involves civil rights claims brought by the mother of a decedent who died on August 6, 2001 while incarcerated in the Dauphin County Prison.

Plaintiff, as Administratrix for the Estate of Thomas Wall, initiated this civil action by a complaint filed in the Eastern District of Pennsylvania on July 22, 2003.  The action was subsequently transferred to the Middle District of Pennsylvania on February 2, 2004.  (Doc. No. 1.)  Plaintiff's complaint names the following Defendants:  Dauphin County; Dauphin County Sheriff J.R. Lotwick; and Deputy Sheriffs Bob Mylnek and Tom Wong.  The complaint alleges that Defendants violated Decedent's Fourth and Fourteenth Amendment rights by directing, participating in, and/or condoning the allegedly unlawful detention of Decedent from July 23, 2001 until his death on August 6, 2001.

Defendants moved to dismiss the complaint on February 5, 2004.  (Doc. No. 2.)  By Order dated April 26, 2004, the Court dismissed Plaintiff's Fourth Amendment claim.  (Doc. No. 17.)  On November 19, 2004, Defendants moved for summary judgment on Plaintiff's remaining due process claims.  (Doc. Nos. 23, 24.)  Plaintiff filed a brief in opposition on December 6, 2004, by which Plaintiff also cross-moves for summary judgment.  (Doc. No. 27.)  Subsequently, Defendants filed a reply brief in support of their motion for summary judgment (Doc. No. 29) and a motion to strike Plaintiffs cross-motion for summary judgment as untimely (Doc. No. 28).

On February 14, 2005, Judge Smyser issued a Report and Recommendation in which he recommended that Defendant's motion for summary judgment be denied, Defendant's motion to strike be granted, and Plaintiff's cross-motion be stricken as untimely.  The Defendants timely filed Objections to the Report and Recommendation (Doc. No. 41), to which Plaintiff filed a response (Doc. No. 42).

**B.      Factual Background**

On July 13, 1999, Plaintiff's decedent[1] was arrested and charged in Harrisburg,

Pennsylvania with a drug offense.  On July 26, 1999, District Justice Solomon reduced

Decedent's bail to $10,000 and Decedent was released on bail.  He was arraigned in the Dauphin

County Court of Common Pleas on September 10, 1999.  Decedent appeared on October 11,

1999, for his scheduled trial; however, Decedent was advised by court personnel that his trial

had been continued to an unspecified date.  Decedent was told that he would be mailed written

notice of a later trial date.  Plaintiff, who accompanied Decedent, provided her Philadelphia

address to an unidentified Dauphin County Court employee, requesting that notice of the new

trial date be sent to that address.  All mailings after that, however, were sent to the Harrisburg

address given by Decedent to the District Justice at his initial appearance.

The conditions of Decedent's bail required that he provide written notification of a

change of address to the bail authority (the District Justice), the Clerk of Courts, the District

Attorney and the Court bail agency within 48 hours of any change of address.  (Doc. No. 33, Ex.

3.)  There is no evidence that Decedent complied with this condition of release.

As indicated in a letter from the District Attorney, dated December 9, 1999, Decedent's

trial was rescheduled to January 10, 2000.  (Doc. No. 33, Ex. 8.)  The letter was mailed to

Decedent at his Harrisburg address and a copy was sent to the Decedent's attorney of record.

(Doc. No. 33, Ex. 9.)  Decedent failed to appear at the rescheduled trial.

Presiding Judge Morrison issued a capias warrant for Decedent's arrest and ordered the

---

[1]Thomas Wall was arrested and charged under the name of Ileem Wells, a/k/a Jerome
Smith.  For simplicity, he will be referred to herein as Decedent.

forfeiture of bail.  (Doc. No. 33, Exs. 10, 11.)  The capias directed Defendant Sheriff Lotwick to

"take [Decedent], . . . and him safely keep, so that you have his body before our Judges at

Harrisburg . . ."  (Doc. No. 33, Ex. 12.)  On June 3, 2001, Decedent was arrested in Philadelphia

pursuant to the capias warrant following a traffic stop.  The Philadelphia Police Department

notified the Dauphin County Sheriff's Office on June 3, 2001, that Decedent was in their custody

and waiting to be picked up.  (Doc. No. 27, Ex. 3.)  On July 23, 2001, Decedent was transported

from Philadelphia to Dauphin County Prison by Defendant Deputies Mylnek and Wong.  (Doc.

No. 1, Compl. ¶¶ 13-15.)  On July 24, 2001, Sheriff Lotwick notified the Dauphin county

District Attorney that Decedent was being held in Dauphin County Prison.  (Doc. No. 33, Ex.

12.)  On July 26, 2001, the District Attorney sent a notice to the Harrisburg address of Decedent

and to counsel of record for Decedent that Decedent's trial had been rescheduled to September

10, 2001.  (Id., Ex. 13.)  On August 6, 2001, the Decedent died in the Dauphin County Prison.

(Doc. No. 1, Compl. ¶ 15.)

## II.   STANDARD OF REVIEW

        When objections to a report and recommendation have been filed, the Court must make a

de novo consideration of those portions of the report to which objections relate.  Carter v. Apfel,

220 F. Supp. 2d 393, 395 (M.D. Pa. 2000) (citing Samples v. Deicks, 885 F.2d 1099, 1106 n.3

(3d Cir. 1989)).  In so doing, the Court may accept, reject, or modify the findings and

recommendations contained in the report.  28 U.S.C. § 636(b)(1); Local Rule 72.1.  Further, in

the exercise of sound judicial discretion, the Court may rely on the Magistrate Judge's proposed

findings and recommendations.  United States v. Raddatz, 447 U.S. 667, 676 (1980); Govey v.

Clark, 749 F.2d 5, 7 (3d Cir. 1984) ("[t]he Supreme Court has recognized the discretion afforded

federal district courts in their use of magistrate's reports").

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is material if it might affect the outcome of the suit under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine only if there is sufficient evidentiary basis which would allow a reasonable fact-finer to return a verdict for the non-moving party. Id. at 249. When deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, who is "entitled to every reasonable inference that can be drawn from the record." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in his complaint; instead, he must "go beyond the pleadings and by [her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Id. at 322.

## III.   **DISCUSSION**

### A.   **Defendants' Motion to Strike**

Defendants moved to strike Plaintiff's cross-motion for summary judgment on the basis that it was untimely.  (Doc. No. 28.)  Pursuant to the September 15, 2004 Case Management Order (Doc. No. 20.), November 15, 2004 was set as the deadline for filing dispositive motions. On December 6, 2004, Plaintiff filed a brief in opposition to Defendants' motion for summary judgment and concurrently cross-moved for summary judgment.  Plaintiff's purported cross-motion for summary judgment was filed three weeks after the dispositive motions deadline. Plaintiff has at all times been represented by counsel, at no time sought an extension of time to file a dispositive motion, and offered no excuse for filing the dispositive motion out of time. Accordingly, Plaintiff's cross-motion will be stricken as untimely.

### B.   **Defendants' Motion for Summary Judgment**

To prevail in an action under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right secured by the Constitution or the laws of the United States.  In addition, a plaintiff must show that the alleged deprivation was committed by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). Plaintiff has alleged that Defendants acted under color of law to violate Plaintiff's due process rights.  Plaintiff contends that Defendants deprived Decedent of his liberty when they "failed to comply with the capias they relied on in arresting [Decedent] by not taking him immediately before a court to contest the arrest and detention."  (Doc. No. 44 at 6.)  The Defendants have moved collectively for summary judgment and assert the following arguments:  lack of personal involvement by individual Defendants; lack of evidence to support a § 1983 supervisory liability

6

claim against Defendant Lotwick; qualified immunity as to all claims against the individual

Defendants; and lack of evidence to support a § 1983 municipal liability claim against Defendant

Dauphin County.  (Doc. No. 24.)

      **1.**      **Plaintiff's Due Process Claim**

The Fourteenth Amendment forbids state actors from depriving persons of life, liberty or

property without due process of law.  U.S. Const. amend. XIV, § 1; see also Elmore v. Cleary,

399 F.3d 279, 282 (3d Cir. 2005).  The protections required by the Due Process Clause are

triggered by the particular rights and interests at stake in a case.  Graham v. City of Philadelphia,

402 F.3d 139, 145-46 (3d Cir. 2005) (citing Washington v. Harper, 494 U.S. 210, 229 (1990)).  It

is clear that "commitment for any purpose constitutes a significant deprivation of liberty that

requires due process protection."  Jones v. United States,  463 U.S. 354, 361 (1983) (quoting

Addington v. Texas, 441 U.S. 418, 425 (1979)); see also Brecht v. Abrahamson, 507 U.S. 619,

639 (1993) (Stevens, J., concurring) ("The Fourteenth Amendment prohibits the deprivation of

liberty 'without due process of law ").

The Due Process Clause protects against the extended detention of a criminal defendant

without any order, provision, or appearance before a judicial officer to contest the validity of the

detention.  The United States Supreme Court has noted that the consequences of prolonged

detention may be more serious than the interference occasioned by arrest.  Gerstein v. Pugh, 420

U.S. 103, 114 (1975).  The Court in Pugh concluded that a judicial determination is a

prerequisite to an "extended restraint of liberty following arrest."  Id.  The Supreme Court

reiterated its concern with extended detention in the context of arrests made pursuant to a valid

warrant.  See Baker v. McCollan, 443 U.S. 137 (1979).  In Baker, the Court held that no

constitutional deprivation occurred where the arrest was made pursuant to a valid warrant, and the plaintiff was jailed for three days over a New Year's weekend before being released; however, the Court suggested that "mere detention pursuant to a valid warrant . . . will after the lapse of a certain amount of time deprive the accused of liberty without due process of law." Id. at 145; see also Coleman v. Frantz, 754 F.2d 719 (7th Cir. 1985) (holding that a county sheriff's detention of a defendant for 18 days on a bench warrant without a court appearance violated due process).[2]

The Supreme Court has held that due process requires that courts hold parole revocation hearings within reasonable time after arrest. Morrissey v. Brewer, 408 U.S. 471, 488 (1972); see also Overton v. Bazzetta,  539 U.S. 126, 138 (2003) (Stevens, J., concurring) ("parole revocation is a deprivation of liberty within the meaning of the Due Process Clause of the Fourteenth Amendment"); Gagnon v. Scarpelli, 411 U.S. 778, 791 (1973) (concluding constitutional protections require a hearing for revocation of probation because such a revocation results in loss of liberty).  The Supreme Court has stated that the key to determining "[w]hether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss'." Morrissey, 408 U.S. at 481 (quoting Joint Anti-Fascist Refugee Comm. v. McGrath,  341 U.S. 123, 168 (1951)

There can be little argument that one's interest in remaining free on bail is within the contemplation of the liberty or property language of the Fourteenth Amendment.  The deprivation of liberty that follows bail revocation condemns one to "suffer grievous loss"

---

[2]Coleman involved a criminal defendant's first appearance; the Decedent here had been afforded an initial appearance in court before his failure to appear.

because it "may imperil the suspect's job, interrupt his source of income, and impair his family relationships." Gerstein, 420 U.S. at 114. Although both bail and parole are conditional liberties, a bailee has a greater liberty interest because, unlike a parolee, a bailee has not been convicted and the presumption of innocence is still attached. Further, state and federal courts within Pennsylvania have specifically affirmed the right to a bail revocation hearing, albeit in different contexts. See King v. Zimmerman, 632 F. Supp. 271, 276 (E.D. Pa. 1986) (holding that revocation of bail pending appeal without notice, hearing, and statements of reasons was a violation of procedural due process rights); Court of Common Pleas of Blair County v. Ramsey, No. 31-1981, 1981 WL 628, at *2 (Pa. Commw. Ct. June 5, 1981) ("safeguards should be afforded a defendant who is in jeopardy of revocation of his bail similar to those provided a parolee facing potential parole revocation").[3]   The Court finds that Defendants were required to provide Decedent with at least a modicum of procedural due process in connection with his bail revocation and his arrest pursuant to the capias.

Defendants argue that they followed the procedure for bail revocation established in Rule 536 of the Pennsylvania Rules of Criminal Procedure and the only process due to Decedent was the right to stand trial. The relevant provision of Rule 536 provides:

> A person who violates a condition of the bail bond is subject to a revocation of release and/or a change in the conditions of the bail bond by the bail authority. . . . When the bail authority changes . . . or revokes the defendant's release, the bail authority shall state in writing or on the record the reasons for so doing.

---

[3]In King, the Court granted a writ of habeas corpus to a criminal defendant whose bail was revoked without a hearing following his criminal conviction, but while his case was on appeal. In the instant case, Decedent's interest in a hearing pending revocation of bail are arguably stronger than the defendant's in King because Decedent had not been convicted of any crime.

42 Pa. Cons. Stat. Ann. § 536.  Although Rule 536 authorizes bail revocation, it does not address the right of the pretrial releasee to a revocation hearing.  However, a taking of liberty must be accompanied by due process, and because elemental due process includes a right to notice and to an opportunity to be heard, the Court cannot construe Rule 536 to permit in all circumstances a final revocation of pretrial release without notice and an opportunity to be heard.[4]

In this case, Decedent was released on bail and failed to appear for trial after it was rescheduled.  Consequently, a capias warrant and forfeiture of bail was ordered.  Decedent was arrested in Philadelphia pursuant to the capias on June 3, 2001.  It was not until July 23, 2001 - nearly two months after Decedent's arrest - that Defendants caused Decedent to be transported from Philadelphia to Dauphin County Prison.  Defendants have come forward with no evidence that during this time period they made any efforts to comply with the express conditions of the capias (i.e., to bring Decedent before a judge in Harrisburg), or to secure a bail revocation hearing, or to take any steps even to transport Decedent to Dauphin County where such process may have been available.  The Court finds that such a deprivation of liberty without a hearing or opportunity to contest the validity of the detention may have violated Decedent's right to due process.

### 2.      Lack of Personal Involvement and Respondeat Superior Liability

Defendants Lotwick, Mylnek, and Wong argue that they are entitled to summary judgment because there is no showing that they were personally involved in a violation of Decedent's due process rights.  In addition, Sheriff Lotwick argues that liability may not be

---

[4]Moreover, a state statute concerning bail revocation does not necessarily dictate that the state's statutory requirement satisfy constitutional due process requirements.

imposed merely through his supervisory role.

In order to state a successful claim for violation of due process pursuant to § 1983, a plaintiff must not only demonstrate an interest included within the Fourteenth Amendment's protections, but must also demonstrate that the state deprived him of that protected interest without requisite notice or hearing.  See Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 570 n.7 (1972); Independent Enter., Inc. v. Pittsburg Water and Sewer Auth., 103 F.3d 1165, 1177 (3d Cir. 1997).

The undisputed facts establish that Defendant Deputies took custody of Decedent and transported him from Philadelphia to the Dauphin County Prison.  Plaintiff has failed to produce any evidence that Defendant Deputies were responsible for the nearly two-month delay in transporting Decedent from Philadelphia or that Defendant Deputies failed to provide Decedent any opportunity to be heard.  To the contrary, it is undisputed that the Dauphin County Sheriff notified the Dauphin County District Attorney of Decedent's confinement in Dauphin County Prison within a day of his transfer from Philadelphia.  Plaintiff contends that Defendant Deputies failed to comply with the mandate of the capias to take the arrestee before the Court; however, the order pursuant to which they took custody of Decedent was directed to the Sheriff of Dauphin County and, in any event, the Court does not find that the Deputies could be found to have violated the capias simply because they first delivered Decedent to Dauphin County Prison. Accordingly, Plaintiff has not demonstrated that Defendant Deputies Mylnek and Wong can be found to have personal involvement in any violation of Decedent's due process rights and Defendants motion for summary judgment with respect to Defendants Mylnek and Wong will be granted.

11

Defendant Lotwick argues that he is entitled to summary judgment on the basis that liability may not be imposed under § 1983 on the principle of respondeat superior. <u>See</u> <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077, 1082 (3d Cir. 1976) (citations omitted). Liability under § 1983 must be based on a defendant's close causal connection to a plaintiff's constitutional injury. <u>Martinez v. Cal.</u>, 444 U.S. 277, 285 (1980). However, a defendant that directed, knew or acquiesced in the deprivation of constitutional rights may be liable for a plaintiff's civil rights claim. <u>See, e.g.,</u> <u>Monell v. Dep't of Soc. Serv.</u>, 436 U.S. 658, 694-95, (1979); <u>Gay v. Petsock</u>, 917 F.2d 768, 771 (3d Cir. 1990); <u>Capone v. Marinelli</u>, 868 F.2d 102, 106 n.7 (3d Cir. 1989); <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

Defendant Lotwick may not be found liable for Plaintiff's § 1983 claim under the theory of respondeat superior. Furthermore, the evidence shows that Defendant Lotwick notified the Dauphin County District Attorney that Decedent was being held in the Dauphin County Prison. (Doc. No. 33, Ex. 12.) Although this Court has found that Decedent was entitled to a bail revocation hearing, the undisputed facts establish that Sheriff Lotwick did in fact take steps to preserve Decedent's due process interest once Decedent was physically in Dauphin County by notifying the Dauphin County District Attorney of Decedent's presence. In addition, the approximately two-week period of time between the return of Decedent to Dauphin County and his death, was not necessarily an excessively long time for him to have been held in detention pending a revocation hearing. Therefore, the Court finds that Defendant Lotwick cannot be liable for violating Decedent's due process rights for the period of time between July 23, 2001, and August 6, 2001.

Although Defendant Lotwick may not be found liable under § 1983 for the period of time

12

after Decedent was transported to Dauphin County, the undisputed evidence shows that he knew

and acquiesced in the deprivation of Decedent's liberty from the time he was arrested in

Philadelphia until he was transported to Dauphin County.  The capias warrant was directed to

Sheriff Lotwick ordering him to "take [Decedent], . . . and him safely keep, so that you have his

body before our Judges at Harrisburg . . ."  (Doc. No. 33, Ex. 12.)  Defendants have failed to

explain why Decedent was not returned from Philadelphia to Dauphin County until July 23, 2001

after his June 3, 2001 arrest.  Absent an explanation for this lengthy delay, the extended restraint

without the opportunity to challenge the validity of the detention may have "deprive[d]

[Decedent] of liberty without due process of law."  See Baker, 443 U.S. at 145.  Defendant

Lotwick has failed to produce any evidence that explains the substantial delay between receiving

notice of Decedent's arrest, and arranging for his transport pursuant to the capias.  Accordingly,

the Court finds that there remain disputed issues of fact regarding Sheriff Lotwick's personal

involvement in Decedent's detention prior to his transportation to Dauphin County Prison, and

the Court finds it would be inappropriate to grant summary judgment in his favor as to this time

period.

### 3.    Qualified Immunity

Defendants assert that they enjoy qualified immunity and are entitled to summary

judgment on this basis.[5]  The doctrine of qualified immunity protects police officers performing

discretionary functions, such as arrests.  See Wilson v. Layne, 526 U.S. 603 (1999).  Qualified

---

[5]The Court will not address the issue of qualified immunity with respect to Defendants
Mylnek and Wong.  For reasons already discussed, the Court has found that Defendants Mylnek
and Wong lacked the requisite close causal connection to the violation of Decedent's
constitutional right and judgment will be entered in their favor.

13

immunity generally shields government officials from liability for civil damages, so long as the officials' "conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In determining whether qualified immunity applies, the Court considers: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right, and if so, (2) whether the right was clearly established at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 200 (2001); Eddy v. Virgin Islands Water and Power Auth., 256 F.3d 204, 208 (3d Cir. 2001); see also United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 398-99 (3d Cir. 2003) (a court must "determine first whether the plaintiff has alleged a deprivation of a constitutional right at all, before reaching the question of whether the right was clearly established at the time"). This analysis must occur for each individual defendant based on his particular conduct. Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996). All allegations must be viewed in a light most favorable to Plaintiff. Saucier, 533 U.S. at 201.

In determining whether a police officer is entitled to qualified immunity, both the existence of a clearly established right and the objective reasonableness of the officers' actions are questions of law for the Court to decide. Sharrar v. Felsing, 128 F.3d 810, 828 (3d Cir. 1997); see also Wilson, 526 U.S. 603. There is an issue for the jury "[o]nly if the historical facts material to the latter issue are in dispute . . . ." Sharrar, 128 F.3d at 828.

Plaintiff has alleged that Decedent was detained without the opportunity to contest the validity of the extended restraint.[6] As discussed above, the Court finds these allegations, if

---

[6]Detention without the opportunity to contest the validity of the extended restraint is a deprivation of the constitutional right to due process. See Jones, 463 U.S. at 361 (quoting Addington v. Tex., 441 U.S. 418, 425 (1979) ("commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection")).

proven, may amount to a violation of Decedent's right to procedural due process.  Thus, the

Court determines that the only remaining issue on qualified immunity is whether the

constitutional right was clearly established.

The right to due process of law is clearly established by the Due Process Clause;

however, for purposes of qualified immunity, a right is clearly established only if "its outlines

are sufficiently clear that a reasonable officer would understand that his actions violate the

right."  Sterling v. Borough of Minersville, 232 F.3d 190, 193 (3d Cir. 2000).   The right to an

opportunity to be heard is clearly such a right.  It is reasonable that a county sheriff would know

that a pretrial releasee could not be arrested and committed for an indefinite period of time

without an opportunity to be heard.[7]

Notwithstanding the foregoing, the Court finds that there remains an issue of material

fact as to whether Defendant Lotwick's conduct in connection with Decedent's extended

detention in Philadelphia gave rise to a constitutional deprivation, or whether Decedent's nearly

two-month detention in Philadelphia was due to factors other than Defendant Lotwick's inaction.

Resolution of this issue of fact obviously bears upon the legal question of whether Defendant

Lotwick's actions in waiting nearly two months to return Decedent to Dauphin County were

reasonable. Accordingly, although the Court finds that Decedent's right to due process was

clearly established at the time of his detention, the Court finds it is premature to answer as a

matter of law whether Defendant Lotwick enjoys qualified immunity from Plaintiff's claims.

### 4.      Municipal Liability

---

[7]The Court further notes that the capias instructed Sheriff Lotwick to "take [Decedent] . .
. before our Judges in Harrisburg."  (Doc. No. 33, Ex. 12.)

15

Plaintiff alleges that Decedent's constitutional rights were violated as a direct and proximate result of the failure of Dauphin County to properly train, supervise, and control its officials and Deputy Sheriffs regarding the due process rights of those detained pursuant to a capias warrant.  (Doc. No. 1, Complaint ¶ 17-18.)  In response, Defendant Dauphin County argues that it has not, as a municipality, caused a constitutional violation.

The Supreme Court has concluded that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1979).  However, municipal liability for a § 1983 action may rest on an allegation that the execution of the local government body's "official policy" itself results in a deprivation of a constitutionally protected right.  <u>See id.</u> at 694; <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1295 (3d Cir. 1997).  In order to support a claim of municipal liability, a plaintiff must:

> [D]emonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

<u>Bd. of County Comm'r v. Brown</u>,  520 U.S. 397, 404 (1997).

Plaintiff alleges that Dauphin County is liable on a theory of failing to train its employees.  However, the Supreme Court has stated that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a [municipal] 'policy or custom' that is actionable under [section] 1983."  <u>City of Canton, Ohio v. Harris</u>,  489 U.S. 378, 389 (1989).  Although Plaintiff alleges that Dauphin County displayed deliberate indifference to the

rights of Decedent by failing to properly train its Deputy Sheriffs, Plaintiff has offered no evidence demonstrating the inadequacy of the training conducted or that Dauphin County knew of and ignored a need for further training.  The Court finds that the undisputed facts fail to support a claim for municipal liability and as a matter of law Defendant Dauphin County is entitled to summary judgment.

IV.    **ORDER**

**AND NOW**, this 5th  day of January, 2006, upon consideration of Magistrate Judge

Smyser's report and recommendation, a <u>de novo</u> review of the record on summary judgment, and

for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT** the

Court adopts Magistrate Judge Smyser's report and recommendation in part as follows:

1.      Defendants' motion to strike Plaintiff's cross-motion for summary judgment

(Doc. No. 28) is **GRANTED**.

2.      Defendant Lotwick's motion for summary judgment (Doc. No. 23) is **DENIED**

with respect to Plaintiff's claims related to the delay between Decedent's arrest in

Philadelphia on June 3, 2001 and transfer to the Dauphin County Prison on July

23, 2001.

**IT IS FURTHER ORDERED THAT** the Court declines to adopt the report and

recommendation in all other respects.  That portion of the motion for summary judgment filed on

behalf of Defendants Dauphin County, Deputy Mylnek, and Deputy Wong (Doc. No. 23) is

**GRANTED**.  The summary judgment motion filed on behalf of Defendant Lotwick with respect

to Plaintiff's due process claims related to the period between July 24, 2001 and August 6, 2001,

during which Decedent was incarcerated in Dauphin County Prison following his transfer from

Philadelphia is **GRANTED**.  The Clerk of Court shall defer entry of judgment until the

conclusion of this action.


 S/ Yvette Kane
Yvette Kane
United States District Judge